IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:25-CR-116-O |
| MARERLLIS NIX (01) | |

**GOVERNMENT'S NOTICE OF INTENT TO USE OTHER ACTS EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 413 AND 404(b)**

The government files this notice of evidence that may be introduced pursuant to Federal Rules of Evidence 413 and/or 404(b).

## Introduction

Marerllis Nix was charged in a superseding indictment with two counts of Sexual Abuse of a Ward in violation of 18 U.S.C. § 2243(b). The government intends to introduce the evidence described below at trial. All records, reports, and discovery related to the evidence described below have been previously provided or made available to the defense attorney and continue to be available for review.

The government intends to introduce the following evidence at trial:

1. In and between September 2020, and March 2021, the defendant had sexual contact with another female inmate, D.P. on at least four occasions;

2. The defendant and D.P. had sexual contact inside her cell in Unit 6 at FMC Carswell;

3. The defendant and D.P. had sexual contact in the TV Room on Unit 6 at FMC Carswell; and

4. The defendant and D.P. had sexual contact in the outside recreation facility known as 'the shack'.

1

5. The defendant offered to send money to D.P. after they had sexual contact.

6. The defendant told D.P. not to say anything about their relationship or report his conduct.

7. On or about June 16, 2021, inmate A.L. told Jane Doe that the defendant and A.L. had sexual contact in FMC Carswell and that the defendant had sexual contact with another inmate.

8. Between January 2021 and July 2021, D.H. another recreation specialist observed Nix with a female inmate sitting on top of a desk facing Nix while Nix was seated in a chair facing her. They appeared to be in conversation and after observing this, D.H. admonished the inmate, because the interaction between Nix and the inmate appeared to be too friendly.

The United States reserves the right to make further disclosures at a later date, but prior to trial, in the event that the government discovers additional evidence of misconduct by the defendant.

## Relevant Facts

Jane Doe, an inmate at Carswell Federal Medical Center, was scheduled for release from prison to a halfway house in August 2021. Certain cautionary measures related to COVID were still in place, so in late July 2021, Jane Doe went into quarantine for two weeks prior to her release. While in quarantine, on July 22, 2021, Jane Doe made an outcry to nurse A.S. about her fear of contracting a sexually transmitted disease from her "boss," defendant Marerllis Nix. Doe also reported that, from May 2021, until July 2021, recreational specialist Nix had engaged in sexual activity with her, to include vaginal and oral acts, on 10 to 12 occasions. Doe also later reported that she had learned that Nix had engaged in sexual activity with other inmates, which led to her concern that

she had developed an infection or contracted a sexually transmitted disease from Nix. Because of her report, FMC Carswell employees followed their standard protocol created under the Prisoner Rape Elimination Act. Nurse A.S. reported the assault to the Prison Operations Lieutenant and the Special Investigative Services Lieutenant. Thereafter, Bureau of Prisons Special Investigative Agent Christi Malone gathered evidence in connection with Jane Doe's report. She also requested a medical exam for Jane Doe and testing for sexually transmitted diseases.

SIA Malone met with Jane Doe, and based on her communications, conducted online searches and preserved Jane Doe's jail calls. Jane Doe said she had talked to family members about the sexual activity with Nix, but said that when she spoke about Nix, she did not refer to him by name and spoke in a different language. After SIA Malone met with BOP officials, they referred the matter to the Department of Justice- Office of Inspector General, which then conducted an investigation into Nix. The investigation included interviewing Nix, conducting additional interviews of Jane Doe, and doing a review of Doe's recorded jail calls.

Jane Doe also reported on two separate occasions that an inmate told her about another inmate engaging in sex acts with Nix. On the second occasion, Jane Doe was transitioning to quarantine. Inmate D.P. was in quarantine with Jane Doe and was the second inmate to report to Jane Doe that she had also had sexual relations with Nix. Jane Doe had previously reported that she thought she had some type of yeast infection; upon learning about D.P.'s allegations, Doe decided to report having unprotected sexual intercourse with Nix. Doe said the last occurrence was on July 4, 2021.

DOJ-OIG agents confirmed through translated jail calls that, in mid-June, Doe had expressed distress and anger upon learning that Nix was having sex with another inmate and argued with her family about demanding money from him to keep quiet. Jane Doe also shared with her family and with agents that she confronted Nix about the other inmate, and that he told her that that relationship had ended in December, before his relationship with Doe. Doe also told her family and agents that Nix told her that he loved her, but that she didn't know whether to believe him.

When DOJ-OIG investigators interviewed Nix, he said that Jane Doe had previously been flirtatious with him and had tried to kiss him, and that he had pushed her away. Nix also said that on July 4, 2021, Jane Doe had unzipped his pants and put her mouth on his penis for two seconds, and that he ejaculated onto the floor. Nix denied any other sexual activity with Jane Doe or any other inmates.

After Doe was released from FMC Carswell, she was assigned to a halfway house and then returned home. In 2024, Doe filed a civil lawsuit against Nix and the Bureau of Prisons. In May 2025, Nix was charged by indictment with two counts of Sexual Abuse of a Ward, in violation of 18 U.S.C. § 2243(b). A superseding indictment, returned on June 11, 2025, made minor, not substantive corrections.[1] Trial is scheduled for August 14, 2025.

---

[1] The superseding indictment extended the dates of sexual contact in Count One and updated Nix's employment to "Recreational Specialist and Federal Correctional Worker."

**Arguments and Authorities**

Although the government believes that the evidence of sexual assault of D.P. is intrinsic to the charged offenses in that learning about these assaults is what prompted Doe to come forward, the evidence is also admissible under Rule 413 and 404(b) as explained below.

1. **Admissibility under 413 (Similar Crimes in Sexual-Assault Case)**

In a criminal case in which a defendant is accused of sexual assault or an attempt or conspiracy to commit sexual assault, Federal Rule of Evidence 413 permits the use of evidence that the defendant committed any other sexual assault. FED. R. EVID. 413(a) and (d).[2] The rule, moreover, does not limit the admission or consideration of evidence under any other rule. FED. R. EVID. 413(c). Indeed, "Congress intended, in passing Rule 413, to provide an exception to Rule 404(b)'s general bar and to permit the trier of fact to draw inferences from propensity evidence." *United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009) (enticement case) (citing *United States v. Julian*, 427 F.3d 471, 486 (7th Cir. 2005); *see also United States v. Schaffer*, 851 F.3d 166, 181 (2d Cir. 2017); *United States v. Guidry*, 456 F.3d 493, 503 (5th Cir. 2006).

---

[2] In relevant part, Rule 413(d) provides:

In this rule and Rule 415, "sexual assault" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving: (1) any conduct prohibited by 18 U.S.C. chapter 109A; (2) contact, without consent, between any part of the defendant's body--or an object--and another person's genitals or anus; (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body;. . . (5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4)."

While Rule 403 balances the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence remains, Rule 413 changes Rule 403's calculation. *Id*. Under Rule 413, in a criminal trial for an offense involving sexual assault, it is not improper to draw the inference that the defendant committed the sex offense because he has a propensity to do so. *Id*. Indeed, Rule 413 evidence normally should be admitted, and Rule 403 should be infrequently invoked to exclude it. *United States v. Enjay*, 143 F.3d 1427, 1431-33 (10th Cir. 1998).

The Ninth Circuit held that evidence of an extraneous sexual assault on a defendant's ex-girlfriend was properly admitted under Rule 413 where the defendant was charged with sexual assault offenses under 18 U.S.C. Chapter 109A. *United States v. Porter*, 121 F.4th 747, (9th Cir. 2024). In prosecution for various sexual assault offenses arising from an incident in which Porter attempted to rape a coworker, the Court allowed Porter's ex-girlfriend to testify that during their 18-month relationship, Porter engaged in forcible non-consensual sex with her. Porter argued that allowing her testimony was a violation of his due process rights, however, the Ninth Circuit admitted the evidence after finding that the district court properly evaluated five factors including (1) the similarity between the prior acts charged, (2) closeness in time, (3) frequency of prior acts, (4) intervening circumstances, and (5) necessity of evidence beyond the testimony in applying a Rule 403 analysis. *Id.* at 752-753, quoting *United States vs. LeMay*, 260 F.3d 1018 (9th Cir. 2001).

Here, the five factors favor admission. The Fifth Circuit has held that evidence of a defendant's commission of other similar crimes and offenses of sexual assault need not be similar in every respect to the charged offense; it only needs to be probative as to some element of the charged offense. *United States v. Dillon* 532 F.3d 379 (5th Cir. 2008) at 389. But here, the sexual acts that occurred between D.P. and Nix are very similar to the charged acts: the conduct happened while D.P. was incarcerated at F.M.C. Carswell, a federal prison, and while D.P. was in official detention and under the custodial, supervisory, or disciplinary authority of Nix. The acts between D.P. and Nix happened close in time to the charged conduct and occurred on multiple occasions. And, learning of these acts is what prompted Doe to come forward with her outcry about Nix. Finally, given Nix's claimed defense – that Doe initiated unwanted sexual contact with him – the prior sexual assault of D.P. is relevant to show his intent. Accordingly, these extraneous acts between D.P. and Nix are admissible under Rule 413 because the sexual acts constitute prohibited conduct under 18 U.S.C. Chapter 109A. *See* FED. R. EVID. 413.

2. **Admissibility under 404(b)**

While all the previously described evidence is admissible under Rule 413, if the Court should determine that such evidence does not fall within that Rule, it should also be admitted pursuant to Fed. R. Evid. 404(b), as relevant to show Nix's identity, motive, knowledge, opportunity, intent, lack of mistake or accident, or modus operandi for intending to commit sexual abuse of a ward.

For extrinsic evidence to be admissible, it must first be relevant to an issue other than the defendant's character and, second, the danger of unfair prejudice to the

defendant must not substantially outweigh the probative value of the evidence. *United States v. Caldwell*, 586 F.3d 338, 345 (5th Cir. 2009) (internal citations omitted); *United States v. Beechum*, 582 F2d.898, 911 (5th Cir. 1978). Relevant evidence may be inherently prejudicial, but "it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983).

By pleading not guilty in this case, Nix has placed in issue his identity, intent, knowledge, and absence of mistake along with, his intent to engage in a sexual act with another person who is in official detention and under the custodial, supervisory, or disciplinary authority of Nix, a recreation specialist at F.M.C. Carswell. *See United States v. Doggett*, 230 F.3d 160, 167 (5th Cir. 2000) (recognizing that by pleading not guilty to a conspiracy charge, the defendant placed motive, intent, knowledge, and absence of mistake at issue). Moreover, Nix claimed that a sexual act that took place between him and Doe on July 4 was involuntary on his part, putting his intent at issue.

The government may prove identity, knowledge, motive, intent, and lack of mistake by presenting evidence that the defendant was involved in similar acts on other occasions. *See United States v. Wolford*, 386 F. App'x 479, 483-84 (5th Cir. 2010) (transcripts of online conversations with anonymous third parties found on defendant's computer, pornographic images of children found on defendant's computer, a list of bookmarked pornographic websites found on defendant's computer, and still images captured from pornographic videos that defendant sent to the undercover officer properly admitted under Rule 404(b) in enticement case); *United States v. Layne*, 43 F.3d 127, 134

8

(5th Cir. 1995) (extrinsic evidence of child pornography admissible when used to prove scienter).

One way for the government to prove identity, motive, intent and knowledge and absence of mistake is through the introduction of extraneous evidence, such as the other sexual acts between D.P. and Nix. This type of evidence is probative to establish the identity of the perpetrator as the defendant, to show his motive in the sexual acts with Jane Doe, and to prove that the sexual acts between Nix and Jane Doe were not an accident or mistake.

Under a Rule 403 balancing test, the evidence the government seeks to offer is highly probative and not unfairly prejudicial. FED. R. EVID. 403. The sexual acts between Nix and D.P. are relevant to show that Nix committed the offense alleged in Counts One and Two and goes to his identity, knowledge, intent, motive, lack of mistake or accident and opportunity to commit the charged offenses.

## Conclusion

The government seeks to introduce evidence and testimony regarding other sexual acts between Nix and D.P. another inmate in F.M.C. Carswell. All the evidence regarding the sexual acts between D.P. and Nix is relevant and probative to establish Nix's commission of the offenses charged in the superseding indictment. Because this evidence is highly probative of the essential elements of Counts One and Two and is not substantially outweighed by any prejudice to the defendant, the government request permission to introduce it. The government likewise requests a pretrial ruling on the admissibility of the evidence.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Allyson Monte*
ALLYSON MONTE
Assistant United States Attorney
Texas State Bar No. 24081858
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile:  817-252-5455
Email: Allyson.Monte@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of July 2025, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who has consented in writing to accept this Notice as service of this document by electronic means: Shane Lewis and Cade Palmer.

*/s/ Allyson Monte*
ALLYSON MONTE
Assistant United States Attorney